**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GENEVIEVE EVANS, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-cv-05880 |
| | : | |
| v. | : | |
| | : | |
| GUITAR CENTER STORES, INC. and | : | |
| FILIP TODOROVSKI, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**<u>BRIEF IN SUPPORT OF DEFENDANT'S RENEWED MOTION TO DISMISS
WITHOUT PREJUDICE TO ARBITRATE</u>**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ....................................................................................... 2

    A.   On May 10, 2019, Ms. Evans Agrees To Arbitrate Claims Arising Out Of
Her Employment With Guitar Center ............................................................... 2

    B.   On November 23, 2020, Despite The Arbitration Agreement, Ms. Evans
Files A Lawsuit In Federal Court Asserting Claims Arising Out Of Her
Employment With Guitar Center ....................................................................... 6

    C.   Ms. Evans Refuse to Arbitrate Her Claims....................................................... 6

III. PROCEDURAL BACKGROUND........................................................................... 6

IV.  ARGUMENT ........................................................................................................... 7

    A.   The Federal Arbitration Act Applies To The Arbitration Agreement ............... 7

    B.   The Court Must Ensure An Expeditious And Summary Hearing, Limited
To The Factual Issues Relevant To Whether Ms. Evans Agreed To
Arbitrate ............................................................................................................. 9

        1.   A Valid Agreement To Arbitrate Exists ................................................ 10

            a.   Ms. Evans And Guitar Center Manifested Their Intention
To Be Mutually Bound By The Arbitration Agreement.............. 11

            b.   The Terms Of The Agreement Are Sufficiently Definite To
Be Enforced. .............................................................................. 15

            c.   The Arbitration Agreement Is Supported By Adequate
Consideration ............................................................................. 16

        2.   Ms. Evans' Claims Fall Within The Scope Of The Arbitration
Agreement.............................................................................................. 16

    C.   This Action Should Be Dismissed Without Prejudice To Ms. Evans'
Ability To Proceed To Arbitration..................................................................... 18

V.   CONCLUSION......................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Eagle Outfitters v. Lyle & Scott Ltd.*,
   584 F.3d 575 (3d Cir. 2009)............................................................................11

*Argun v. Neiman Marcus Group, Inc.*,
   2020 U.S. Dist. LEXIS 45979 (D.N.J. Mar. 16, 2020)........................................14

*AT&T Mobility, LLC v. Concepcion*,
   563 U.S. 333 (2011)............................................................................................7

*Battaglia v. McKendry*,
   233 F.3d 720 (3d Cir. 2000)..............................................................................17

*Blair v. Scott Specialty Gases*,
   283 F.3d 595 (3d Cir. 2002)..............................................................11, 16, 18

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006)............................................................................................7

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
   584 F.3d 513 (3d Cir. 2009)..............................................................................10

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001)............................................................................................8

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003)..............................................................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)............................................................................................9

*Direct TV, Inc. v. Imburgia*,
   577 U.S. 47 (2015)..........................................................................................7, 8

*Epic Systems Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)........................................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
   514 U.S. 938 (1995)..............................................................................7, 10, 15

*Gedid v. Huntington Nat'l Bank*,
   No. 11-1000, 2012 WL 691637 (W.D. Pa. Feb. 10, 2012)...................................18

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ...........................................................................................7, 8

*Golden Gate Nat. Senior Care, LLC v. Addison*,
  No. 14-MC-0421, 2014 WL 4792386 (M.D. Pa. Sept. 24, 2014) ...........................................10

*Gomez v. Rent-A-Center, Inc*,
  2018 U.S. Dist. LEXIS 114910 (D.N.J. Jul. 10, 2018) ......................................................13, 14

*Griffin v. Credit One Fin.*,
  2016 U.S. Dist. LEXIS 16745 (E.D. Pa. Feb. 11, 2016) ......................................................14

*Griffin v. Credit One Fin.*,
  No. 15-3700 (E.D. Pa. Feb. 11, 2016) ......................................................................9

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
  716 F.3d 764 (3d Cir. 2013)....................................................................................9

*Hall St. Assoc., LLC v. Mattel, Inc.*,
  552 U.S. 576 (2008)............................................................................................7

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002)..............................................................................................10

*Ingrassia Constr. Co., Inc. v. Walsh*,
  337 Pa. Super. 58, 486 A.2d 478 (1984) ....................................................................11

*Juric v. Dick's Sporting Goods, Inc.*,
  2020 U.S. Dist. LEXIS 137299 (W.D Pa. Aug. 3, 2020) ...........................................12, 13, 14

*Laibow v. Menashe*,
  2019 U.S. Dist. LEXIS 203301 (D.N.J. Nov. 21, 2019).....................................................9, 14

*Liptak v. Accelerated Inventory Mgmt., LLC*,
  2021 U.S. Dist. LEXIS 31008 (W.D. Pa. Feb. 19, 2021) ...................................................13, 14

*Marotta v. Toll Bros.*,
  No. 09-2328, 2010 WL 744174 (E.D. Pa. Mar. 3, 2010) .................................................15, 16

*Masoner v. Education Mgmt. Corp.*,
  18 F. Supp.3d 652 (W.D. Pa. 2014)......................................................................10, 16

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995)..............................................................................................8

*Morina v. Neiman Marcus Group, Inc.*,
  2014 U.S. Dist. LEXIS 141533 (E.D. Pa. Oct. 1, 2014).....................................................14

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ....................................................................................7, 16

*Oliver v. Nordstrom King of Prussia*,
    No. 10-5340, 2010 WL 5121966 (E.D. Pa. Dec. 14, 2010) ............................10, 15

*PacifiCare Health Sys., Inc. v. Book*,
    538 U.S. 401 (2003) ...........................................................................................10

*Patten v. AVDG, LLC*,
    No. 21-cv-0849-SM (DNH Apr. 12, 2022) ........................................................12

*Perry v. Thomas*,
    482 U.S. 483 (1987) .............................................................................................7

*Renfrew Ctrs. v. Uni/Care Sys.*,
    920 F. Supp. 2d 572 (E.D. Pa. 2013) .................................................................17

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.*,
    490 U.S. 477 (1989) .............................................................................................8

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ...............................................................................................17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ...........................................................................................17

**Statutes**

42 Pa. C.S.A. § 7303 ...................................................................................................10

9 U.S.C. § 2 .................................................................................................................7

9 U.S.C. § 4 .................................................................................................................9

FAA ...............................................................................................................7, 8, 9, 16

**Other Authorities**

Fed. R. Civ. P. 56(a) ...............................................................................................6, 9

## I.     INTRODUCTION

Plaintiff Genevieve Evans and Defendant Filip Todorovski are both former employees of Defendant Guitar Center Stores, Inc.  Mr. Todorovski was Ms. Evans' supervisor during the few weeks she worked for Guitar Center.  According to Ms. Evans, while the two were at work on May 24, 2019,  Mr. Todorovski had "sex with her" while she "adamantly opposed" his actions, "demanded that he cease and desist, and informed him that she was in enormous physical pain."  (Am. Compl. ¶¶ 15-18.)  According to Ms. Evans, Mr. Todorovski ignored her entreaties, ultimately leaving her bloodied and telling her to "get back to work."  (Am. Compl. ¶ 19.)

The facts Ms. Evans pleads would, if true, constitute a heinous, violent crime.  She never reported that alleged crime to law enforcement, notified Human Resources, or filed an employee Hotline Report.  Instead, she filed this civil lawsuit, in which she asserts claims arising from the alleged incident and seeks a money judgment.  Defendants deny Ms. Evans' shocking allegations and intend to defeat her claims.

In the present motion, the Court must decide, however, not who will win, but where the case will be decided.  Below, Guitar Center presents evidence Ms. Evans never could have become a Guitar Center employee without agreeing to arbitrate disputes arising from her employment.  Ms. Evans cannot dispute that evidence.  She can only assert  that she does not remember, one way or the other, whether she assented to arbitration.  For those reasons, and because consideration supports the parties' Arbitration Agreement and this dispute falls under that contract, the Court must dismiss this lawsuit without prejudice to Ms. Evans' ability to pursue her claims in arbitration.

II.     **STATEMENT OF FACTS**

   A.     **On May 10, 2019, Ms. Evans Agrees To Arbitrate Claims Arising Out Of Her Employment With Guitar Center**

Headquartered in Westlake Village, California, Guitar Center is the largest chain of music retailers in the United States, with employees across approximately 600 locations.  (*See* Ex. A, Declaration of Kristin Jaramillo "Jaramillo Decl." at ¶ 3.)   Ms. Evans began working for Guitar Center on May 13, 2019 as a Senior Sales Associate at one of Guitar Center's "Music and Arts" stores in Plymouth Meeting, Pennsylvania.  (*See* Jaramillo Decl. at ¶ 4; *see also* Am. Compl. (ECF 18) at ¶¶ 9-10.)   Throughout her employment with Guitar Center, Ms. Evans reported directly to General Manager Filip Todorovski.  (Am. Compl. (ECF 18) at ¶ 11.)

It is absolutely impossible to become a Guitar Center employee without entering into an Arbitration Agreement:  *all* Guitar Center job applicants must use Automatic Data Processing, Inc. ("ADP") (the largest provider of human resources management web-based services) to sign electronically an offer letter which included the Arbitration Agreement *before* receiving an offer of employment from Guitar Center.  (*See* Ex. B, Relevant Excerpts of Deposition of Kristin Jaramillo, "Jaramillo Dep.," at 13:6-21; *see also* Jaramillo Decl., at ¶ 5.)  Consistent with this practice, Guitar Center provided Ms. Evans with an offer letter attaching the Arbitration Agreement, and Guitar Center required that she sign that contract before commencing employment.  (*See* Ex. C, Relevant Excerpts of Deposition of Genevieve Evans, "Evans Dep." at Ex. 5.) ("This agreement and agreeing to submit to the Arbitration Program is a condition of new or continued employment.").)  On May 10, 2019 at 10:27 a.m., Ms. Evans electronically signed her offer letter and the Arbitration Agreement.  (*See* Jaramillo Dep., 45:7-12; Evans Dep. at Ex. 6.)   Ms. Evans' electronic signature is evidenced by "OF – Accepted" located in her

2

electronic footprint.[1]  (*See* Evans Dep. at Ex. 6, p. 5.)

The Arbitration Agreement provides that,

> [t]o provide for more expedient resolution of disputes, we have instituted a mandatory arbitration procedure for all associates that are not otherwise covered by an agreement relating to the terms of employment (we call it the 'Arbitration Program').  Under the Arbitration Program, covered disputes between you and the company must be submitted for resolution by mandatory arbitration after appropriate attempts have been made to resolve the dispute informally.
>
> . . .
>
> This agreement and agreeing to submit to the Arbitration Program is a condition of new or continued employment.  If you accept or continue employment with the company, both you and the company will be bound by its terms.  Your acceptance or continuation of employment with the company and the company's reciprocal agreement to arbitrate covered claims constitutes consideration for the obligations imposed by this agreement.

(*Id.* at Ex. 5, pp. 3-4.)  Through the Arbitration Agreement, Ms. Evans agreed to arbitrate

- ***disputes arising out of [her] hiring, employment or termination of employment***;
- disputes alleging violation of wage and hour laws or pay practices;
- disputes involving confidentiality or trade secret violations or unfair competition;
- ***disputes alleging harassment or discrimination (including, among others, discrimination based on sex***, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual orientation, mental or physical disability or medical condition or other characteristics protected by law);
- disputes alleging a breach of an express or implied duty, such as among others, breach of contract or breach of the covenant of good faith and fair dealing;
- disputes alleging a violation of public policy;
- ***disputes alleging any other violation of federal, state or local law***; and

---

[1] In Guitar Center's Motion to Dismiss filed on February 24, 2021 (ECF 19), it cited to "Esig accepted [1009_Senior Sales Associate 054_Evans_1557260682114]" on May 10, 2019 as evidence of Ms. Evans' agreement to arbitration. However, through discovery, it came to light that this e-signature represents consent to the background check process.

- ***disputes alleging any other tort*** or violation of contractual or common law rights.

(*Id.*, p. 3 (emphasis added).)

The chronology can be pinpointed because any action an applicant to Guitar Center takes with respect to applying to a position, accepting an offer of employment, agreeing to arbitration, consenting to a background check, or ultimately being hired, is tracked in an "electronic footprint." (*See* Jaramillo Decl., at ¶ 6.) The footprint is housed by ADP and cannot be manipulated by Guitar Center. (*See* Jaramillo Dep., 22:19-21; 23:11-14). The system is designed so that, once an applicant takes an action, *e.g.,* agreeing to arbitration, the system then "reacts" by the form of allowing the candidate to proceed to the next step. (*See* Jaramillo Dep., 25:12-19.) This is known as the "work flow." (*See* Jaramillo Dep., at 32:17-22.) The work flow process is set up so that, if an applicant does not accept an offer of employment which includes the Arbitration Agreement, it is *impossible* for that applicant to begin working for Guitar Center. (*See* Jaramillo Dep. 25:9-19; 44:13-23.) If an applicant does not agree to arbitration, the work flow immediately stops, and nothing else appears subsequently in the electronic footprint. (*See* Jaramillo Dep., 37:21-23.)

From the perspective of an individual applying to a position at Guitar Center, the first step is to select a position.[2] (*See* Ex. D.) Candidates then are prompted to fill out background information, including but not limited to their phone numbers and addresses, how they heard about the position, and their former employers. (*See* Ex. E.) After they submit their applications, applicants await a phone interview with a Guitar Center employee. (*See* Evans Dep., 29:2-20;

---

[2] In order to illustrate the point, Guitar Center used a test applicant to illustrate the various steps an applicant must go through in order to be hired by Guitar Center. Namely, this process demonstrates that an applicant will only be hired upon their acceptance of the offer letter and arbitration agreement.

4

*see also* Jaramillo Dep., 54:19-55:2.)  ADP next sends candidates who pass the phone interview an email containing a link to Guitar Center's offer of employment and the Arbitration Agreement, which is included with the offer letter.  (*See* Ex. F.)  After receipt of the email, successful candidates then click on the "View/Accept Offer" link in the email, which brings them to a copy of their offer letter and attached Arbitration Agreement.  (*See* Exs. F, G.)  After reviewing the offer letter and Arbitration Agreement, candidates select "decline" or "accept." (*See* Ex. H.)  Candidates who accept are prompted for a signature and then select the green "accept" button, ultimately agreeing to the offer of employment and its attached Arbitration Agreement.  (*See* Ex. H.)   Once candidates accept the offer of employment and Arbitration Agreement, they continue with the remainder of the onboarding process, including the background check.  (*See* Jaramillo Dep., 44:6-23; 57:16-22.)

Here, Ms. Evans is "sure" she clicked on the "View/Accept Offer" link in the email from ADP that contains the link to view her offer and the Arbitration Agreement.  (Evans Dep., 37:8-10).  Ms. Evans also "is sure she received the offer letter" (and thus the Arbitration Agreement) but does not remember, "one way or the other," whether she agreed to arbitration.  (Evans Dep., 37:19-38:4; Ex. 5.)  Beyond that, Ms. Evans remembers nothing about the onboarding process. (*See* Evans Dep., 43:24-44:3.)  Nevertheless, after Ms. Evans electronically signed the offer letter and Arbitration Agreement on May 10, 2019 at 10:27 a.m., her electronic footprint did not "stop": it continued to reflect her participation in the onboarding process, including her agreement to the background authorization at 10:31 on May 10, 2019.  (*See* Evans Dep., at Ex. 6, p. 4.)  The footprint also illustrates her start date of May 13, 2019, and ends on June 6, 2019, after which Ms. Evans was no longer employed.  (*See* Evans Dep., at Ex. 6, pp. 1-2.)

**B.**     **On November 23, 2020, Despite The Arbitration Agreement, Ms. Evans Files A Lawsuit In Federal Court Asserting Claims Arising Out Of Her Employment With Guitar Center**

After commencing this action by filing a complaint on November 23, 2020 (ECF 1), Ms. Evans filed a first amended complaint on February 19, 2021 (ECF 18), alleging Guitar Center violated Title VII and the PHRA by discriminating against her because of her sex.  (*See* Am. Compl. (ECF 18) at ¶¶ 25-32.)  She also asserts common law tort claims (assault and battery), and an aiding and abetting claim under the PHRA, against Mr. Todorovski, centered on allegations he sexually assaulted her in the workplace.  (*See* Am. Compl. (ECF 18) at ¶¶ 33-43.) All of these claims fall within the scope of the Arbitration Agreement.  (*See* Evans Dep., at Ex. 5, pp. 3-4.)

**C.**     **Ms. Evans Refuse to Arbitrate Her Claims.**

Ms. Evans' counsel informed defense counsel that Ms. Evans contests formation of the Arbitration Agreement and will not stipulate to dismiss her claims to arbitration.

**III.    PROCEDURAL BACKGROUND**

On February 24, 2021, Guitar Center moved to dismiss the lawsuit without prejudice to arbitration.  On February 10, 2022, this Court denied Guitar Center's motion without prejudice and ordered 60 days of discovery "for the limited purpose as to whether Plaintiff entered into a valid arbitration agreement with Defendant."  (ECF 35.)  The Order also provided that Guitar Center could file its renewed motion two weeks after the close of discovery.  (*Id.*)

During discovery, Guitar Center and Ms. Evans exchanged written discovery and conducted depositions.  Specifically, on April 4, 2022 counsel for Guitar Center deposed Ms. Evans, and counsel for Ms. Evans deposed Kristin Jaramillo, Guitar Center's Director of Human Resources.

## IV.  ARGUMENT

### A.  The Federal Arbitration Act Applies To The Arbitration Agreement

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011), and again in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018), the Federal Arbitration Act ("FAA") declares a liberal federal policy favoring the enforcement of arbitration agreements.  The statute provides that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In enacting the FAA, Congress sought to overcome widespread judicial hostility to arbitration agreements.  *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").

The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  The FAA is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).  To that end, the FAA not only places arbitration agreements on equal footing with other contracts but amounts to a "congressional declaration of a liberal federal policy ***favoring*** arbitration agreements."  *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24) (emphasis added); *Direct TV, Inc. v. Imburgia*, 577 U.S. 47, 53 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act.").

The Arbitration Agreement at issue here is governed by the FAA for three reasons.  *First*,

the Arbitration Agreement expressly states, "this agreement is governed by the Federal Arbitration Act," (Evans Dep., Ex. 5, pp. 3-4), which is sufficient to bring it within the purview of the FAA. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995) (for state law to apply exclusively to an arbitration agreement, the agreement must opt out of the FAA and express that state law applies); *Imburgia*, 577 U.S. at 53-59 (FAA applies even if agreement designates a state choice of law). *Second*, the Arbitration Agreement affects commerce. The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting the FAA's term "involving commerce" broadly and finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce). Guitar Center (the largest music retailer chain in the United States) operates 600 music retail locations throughout the United States. (*See* Jaramillo Decl. at ¶ 3.) Thus, Guitar Center's contracts involve commerce. *Third*, for state law to apply exclusively to an arbitration agreement, the agreement must opt out of the FAA and express that state law applies. *Mastrobuono*, 514 U.S. at 63-64. The Arbitration Agreement does not do so here. (*See* Evans Dep., at Ex. 5, pp. 3-4.)

In keeping with the "liberal federal policy favoring arbitration," the Supreme Court has consistently endorsed arbitration as an effective means of dispute resolution in employment cases and has upheld such arbitration agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (arbitration agreement enforced when employee had to sign agreement during application process); *Gilmer*, 500 U.S. at 20 (enforcing agreement to arbitrate employment-related claims in securities representative registration that plaintiff had to sign); *Rodriguez de*

*Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989) (arbitration agreement enforced despite parties' alleged unequal bargaining power).  If an arbitration agreement exists, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

**B.    The Court Must Ensure An Expeditious And Summary Hearing,   Limited To The Factual Issues Relevant To Whether Ms. Evans Agreed To Arbitrate**

The Rule 56 summary judgment standard applies to Guitar Center's renewed motion to compel arbitration.  *See Griffin v. Credit One Fin.*, No. 15-3700, at *3 (E.D. Pa. Feb. 11, 2016) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013)).  Thus, the Court must grant the motion if there is no genuine dispute as to any material fact.  *Id.* (citing Fed. R. Civ. P. 56(a)). The initial burden of demonstrating there are no genuine issues of material fact falls on Guitar Center as the moving party.  *Id.* (citing Fed. R. Civ. P. 56(a)).  Once Guitar Center has met its burden, Ms. Evans, as the nonmoving party, must counter with "specific facts showing that there is a genuine issue for trial." *Id.*  She must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Id.*

Because "[f]ederal law is decidedly pro-arbitration," "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Laibow v. Menashe*, 2019 U.S. Dist. LEXIS 203301, at **18-19 (D.N.J. Nov. 21, 2019).  The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4.[3]

---

[3] The same is true under Pennsylvania law: "[a] . . . provision in a written agreement to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and

Except where the issues have been delegated to an arbitrator, the court begins its inquiry with evaluating two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Masoner v. Education Mgmt. Corp.*, 18 F. Supp.3d 652, 658-59 (W.D. Pa. 2014). Both requirements are satisfied here.

### 1.    A Valid Agreement To Arbitrate Exists

General contact law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thus, courts look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 524 (3d Cir. 2009) (citing *First Options*, 514 U.S. at 944); *accord Oliver v. Nordstrom King of Prussia*, No. 10-5340, 2010 WL 5121966, at *3 (E.D. Pa. Dec. 14, 2010). Here, the Arbitration Agreement was formed in Pennsylvania, and Ms. Evans worked for Guitar Center in Pennsylvania. (*See* Am. Compl. (ECF 18) at ¶¶ 5-6.) Therefore, Pennsylvania law governs. *See, e.g.*, *Golden Gate Nat. Senior Care, LLC v. Addison*, No. 14-MC-0421, 2014 WL 4792386, at *13 (M.D. Pa. Sept. 24, 2014) ("Arbitration is a matter of contract, and in determining whether an agreement to arbitrate is valid, courts apply the laws of the state where the contract was formed.").

Under Pennsylvania law, a valid contract requires (1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3)

---

irrevocable, save upon such grounds as exist at law or in equity relating to validity, enforceability or revocation of any contract." 42 Pa. C.S.A. § 7303.

consideration.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).  All three factors exist here.

### a. Ms. Evans And Guitar Center Manifested Their Intention To Be Mutually Bound By The Arbitration Agreement

"In assessing intent, the object of inquiry is not the inner, subjective intent of the parties, but rather the intent a reasonable person would apprehend in considering the parties' behavior." *Am. Eagle Outfitters v. Lyle & Scott Ltd*., 584 F.3d 575, 582 (3d Cir. 2009) (citing *Ingrassia Constr. Co., Inc. v. Walsh*, 337 Pa. Super. 58, 486 A.2d 478, 483 (1984)).  Here, Ms. Evans manifested a clear intention to be bound by the Arbitration Agreement by electronically acknowledging her acceptance of the Agreement -- which is demonstrated by her participation in the entire application and onboarding process, and ultimately her being hired to work at Guitar Center.

The process for applying for the Senior Sales Associate position is as follows: (1) a candidate applies online; (2) she is interviewed; (3) Guitar Center extends an offer; (4) ADP then sends an email containing a "View/Accept Offer" link to a portal; (5) the applicant clicks on the link, enters their personal login information, which prompts them to the offer letter, containing the Arbitration Agreement; and (6) the applicant either "accepts" or "declines" the offer and Arbitration Agreement.  (*See* Evans Dep., 28:21-23; 29:2-20; *see also* Jaramillo Dep., 54:22-55:2; 41:12-23; 46:13-21.)  Again, if a candidate selects "decline," the process ends, and the applicant does not proceed to the background check portion of the onboarding process.  (*See* Jaramillo Dep., 37:21-23.)  If the applicant selects "accept," and enters their name in the signature line, the acceptance of the offer letter and arbitration agreement "kicks off" the background check process, and the candidate continues with the remainder of the onboarding process.  (*See* Jaramillo Dep., 45:10-18.)

Here, Ms. Evans agrees she applied to be a Senior Sales Associate on May 7, 2019 at the Plymouth Meeting Music & Arts location. (*See* Evans Dep., 28:14-20; Ex. 4.) She remembers that she applied for this position online. (*See* Evans Dep., 28:21-23.) She remembers that, after she submitted her application, she received a phone call from Mr. Todorovski for an initial phone interview. (*See* Evans Dep., 29:2-20.) Before beginning her employment, Ms. Evans also agrees she received an offer letter *which is the same document as the Arbitration Agreement*. (*See* Evans Dep. 37:19-38:4; Ex. 5; *see also* Jaramillo Dep. 56:2-19.)

For the remainder of the application and onboarding process, Ms. Evans claims she remembers nothing. (*See* Evans Dep., 43:24-44:3.)[4] Notably, Ms. Evans does not remember "one way or another whether she provided her electronic signature" assenting to arbitration. (Evans Dep. 41:8-18.)

On these facts, it is established as a matter of law that Ms. Evans assented to the Arbitration Agreement. Where, as here, a party seeking to enforce an arbitration agreement shows the resisting party was presented with private login information to electronically acknowledge an arbitration agreement, and the party seeking to enforce the arbitration agreement puts forth evidence that the resisting party could not have entered an employment or other contractual relationship without agreeing to the arbitration agreement, and if the resisting party's only countervailing evidence is that she *doesn't remember* signing the arbitration agreement, the court must compel arbitration. *See Juric v. Dick's Sporting Goods, Inc.*, 2020 U.S. Dist. LEXIS 137299 (W.D Pa. Aug. 3, 2020); *see also* Ex. I, *Patten v. AVDG, LLC,* No. 21-cv-0849-SM (DNH Apr. 12, 2022).

---

[4] Ms. Evans claims not to remember receiving an email containing her offer letter (*See* Evans Dep., 43:24-44:3), but Ms. Evans deleted all emails relating to her employment at Guitar Center and she produced no documents in response to Guitar Center's Requests for Production of Documents. (*See* Evans Deps. 17:13-18:6; Ex. J, Genevieve Evans' Responses to Guitar Center's Requests for Production of Documents.)

In *Juric*, the Western District of Pennsylvania rejected the employees' argument that an arbitration agreement was not enforceable because she could not recall electronically signing the agreement. *See Juric*, 2020 WL 4450328, at *10. Further, the court noted that "where plaintiffs denied agreeing to arbitration, but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation." *Id.* at *10. The court held that even though the employee could not remember agreeing to arbitration, failing to remember doing so did not create and issue of fact: an arbitration agreement was formed. *See id.* at **21-31. Two other cases are similar in that the fact that the party resisting arbitration professed not to remember assenting to an arbitration agreement, the courts held that there was no material issue of fact as to formation and compelled arbitration.

In *Gomez v. Rent-A-Center, Inc*, 2018 U.S. Dist. LEXIS 114910 (D.N.J. Jul. 10, 2018), the employee testified that she did "not remember" electronically assenting to the arbitration agreement and that anyone could have signed it. *Id.* at **7-8. Specifically, the employee argued that "[a]nyone could have typed [her] name into the 2016 Arbitration Agreement and Defendant failed to prove that has not otherwise happened." *Id.* at *7. However, because her signature could be affixed only to the contract by using her unique password, the court held she did assent. *See id.* at *9.

In *Liptak v. Accelerated Inventory Mgmt., LLC*, 2021 U.S. Dist. LEXIS 31008 (W.D. Pa. Feb. 19, 2021), the plaintiff, a loan borrower, argued that he did not remember reading a "clickwrap" agreement or assenting to arbitration. *See id*. at **5-6. However, the party seeking to enforce the agreement put forth evidence that, to obtain loan funds, the plaintiff had to navigate past a webpage that contained two "I Agree" buttons. *See id*. at **1-2. Because this process was in place for all individuals obtaining a loan, the court determined that plaintiff could not

13

have obtained a loan without electronically assenting to the arbitration agreement, and his failure to remember doing so did not create an issue of fact on formation. *See id.* at **4-7. *Juric*, *Gomez*, and *Liptak* are not outliers. *See, e.g.*, *Griffin v. Credit One Fin.*, 2016 U.S. Dist. LEXIS 16745, at **3-7 (E.D. Pa. Feb. 11, 2016) (granting employer's renewed motion to dismiss without prejudice to arbitrate after plaintiff claimed a lack of recollection and ignorance as to the arbitration agreement); *Argun v. Neiman Marcus Group, Inc.*, 2020 U.S. Dist. LEXIS 45979, at **20-23 (D.N.J. Mar. 16, 2020) (compelling arbitration and holding that a "party may manifest assent to contract by clicking on a link on a website"); *Laibow v. Menashe*, 2019 U.S. Dist. LEXIS 203301, at **17-19 (D.N.J. Nov. 21, 2019) (grating motion to dismiss despite plaintiff stating "I do not remember receiving or signing" an arbitration agreement); *Morina v. Neiman Marcus Group, Inc.*, 2014 U.S. Dist. LEXIS 141533, at *25 (E.D. Pa. Oct. 1, 2014)(compelling arbitration where plaintiff did not allege he never received arbitration agreement but rather that "he does not recall receiving it.")

Here, as *in Juric, Gomez, and Liptak*, Ms. Evans' inability to recall signing the Arbitration Agreement does not nullify it; she remains bound to it. Specifically, her claim that "she does not remember" assenting to arbitration is not enough to create an issue of fact as to whether she entered into the agreement. This is because Guitar Center has put forth evidence that *every* employee applying for a position must create a username and password in the ADP portal and are ultimately asked to "accept" or "decline" the offer letter and the Arbitration Agreement. If an applicant declines arbitration, the onboarding process ends, and it is impossible for the applicant to be employed at Guitar Center. However, here, Ms. Evans' clicked "accept" and entered her name in the signature line electronically agreeing to arbitration. If Ms. Evans did not accept, her electronic footprint would be blank, and she would not have proceeded with

the remainder of the onboarding process, and most significantly, would not have been employed at Guitar Center.

The Court should conclude as a matter of law that the parties assented to the Arbitration Agreement.

> **b.   The Terms Of The Agreement Are Sufficiently Definite To Be Enforced.**

The terms of the Arbitration Agreement are sufficiently definite to be enforced.  *First*, the Arbitration Agreement specifically states "[u]nder the Arbitration Program, covered disputes between you and the company must be submitted for resolution by mandatory arbitration after appropriate attempts have been made to resolve the dispute informally," and that "BY ELECTRONICALLY SIGNING THIS AGREEMENT, YOU AFFIRM THAT YOU UNDERSTAND THAT BY USING ARBITRATION TO RESOLVE DISPUTES YOU ARE GIVING UP ANY RIGHT TO A JUDGE OR JURY TRIAL WITH REGARD TO ALL DISPUTES SUBJECT TO THIS AGREEMENT." (*See* Evans Dep.,  at Ex. 5, pp. 3-4.)  *Second*, the Arbitration Agreement defines covered disputes to include (among other disputes) any and all (1) "disputes arising out of your hiring, employment or termination of employment"; (2) "disputes alleging harassment or discrimination (including, among others, discrimination based on sex . . . or other characteristics protected by law)"; (3) "disputes alleging any other violation of federal, state or local law"; and (4) "disputes alleging any other tort . . . or common law rights." (*See id*. at Ex. 5, p. 3.)  These terms are sufficiently definite to be enforced.  *See, e.g.*, *Oliver*, 2010 WL 5121966, at *3-4 (finding that terms of the agreement were sufficiently definite to require arbitration of employment discrimination claims where the agreement stated that the employer's dispute resolution program would be employed to resolve disputes and claims between employees and the company); *Marotta v. Toll Bros.*, No. 09-2328, 2010 WL 744174,

at *3 (E.D. Pa. Mar. 3, 2010) (finding that the terms of the agreement were sufficiently definite to require arbitration of employment discrimination claims where the agreement directed that all employment-related claims were subject to arbitration).  The Agreement explains the procedures applicable to any arbitration proceeding initiated by either party.  (*See* Evans Dep., at Ex. 5, pp. 3-4.)  Finally, Ms. Evans agreed that her waiver of her rights to a trial by judge or jury was done voluntarily and knowingly.  (*Id*. at p. 4.)  For all of these reasons, the terms of the Arbitration Agreement are sufficiently definite to be enforced.

### c.     The Arbitration Agreement Is Supported By Adequate Consideration

There was adequate consideration.  The mutual exchange of promises to arbitrate disputes represents the necessary consideration in support of an arbitration agreement.  *See Blair*, 283 F.3d at 603-04 ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced."); *Masoner v. Education Mgmt. Corp.*, 18 F. Supp. 3d 652. 660 (W.D. Pa. 2014) (concluding that adequate consideration existed to support an arbitration agreement where both parties agreed to arbitrate claims brought by either party).  Here, adequate consideration exists for the Arbitration Agreement because both Ms. Evans and Guitar Center agreed that arbitration would be the method by which they would settle covered disputes.  (*See* Evans Dep., at Ex. 5 pp. 3-4.)  That the arbitration was also entered at the outset of employment means it is supported by consideration.  *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

The Arbitration Agreement is, therefore, valid and binding under Pennsylvania law.

### 2.     Ms. Evans' Claims Fall Within The Scope Of The Arbitration Agreement

There is no straight-faced argument that Ms. Evans' claims are outside of the scope of the Arbitration Agreement.  As a threshold matter, the FAA requires courts to apply a

16

presumption in favor of arbitrability.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  In the arbitration context, the phrase "arising out of or relating to" is language that courts have frequently deemed this language—the broadest sort of all-encompassing language available. *See Southland Corp. v. Keating*, 465 U.S. 1, 15-16 n.7 (1984); *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) ("In sum, when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction"); *Renfrew Ctrs. v. Uni/Care Sys.*, 920 F. Supp. 2d 572, 574 (E.D. Pa. 2013) ("These cases contain the quintessential broad arbitration provision, that directs to arbitration any controversy or claim 'arising out of' or 'related to' the agreement").

This case is far from a close call.  Invoking Title VII and the PHRA, Ms. Evan's amended complaint asserts two counts against Guitar Center centered on allegations it discriminated against her and subjected her to a hostile work environment because of her sex.  (*See* Am. Compl. (ECF 18), Counts I-II.)  Separately, invoking the PHRA and Pennsylvania common law tort claims (assault and battery), Ms. Evans' amended complaint asserts three counts against Mr. Todorovski centered on allegations he aided and abetted the sexual harassment, and that he, himself, sexually assaulted her in the workplace.  (*See* Am. Compl. (ECF18), Counts III-V.)  The Arbitration Agreement's broad applicability to (1) "disputes arising out of [Ms. Evans'] hiring, employment or termination of employment"; (2) "disputes alleging harassment or discrimination (including, among others, discrimination based on sex . . . or other characteristics protected by law)"; (3) "disputes alleging any other violation of federal, state or local law"; and (4) "disputes

alleging any other tort . . . or common law rights" (Evans Dep., at Ex. 5, pp. 3-4), on its own terms, covers Ms. Evans' claims.  Ms. Evans' claims indisputably fall within the scope of the clear and unambiguous language of the Arbitration Agreement she agreed to be bound by.  Her claims must, therefore, be submitted to binding arbitration.

> ### C.   This Action Should Be Dismissed Without Prejudice To Ms. Evans' Ability To Proceed To Arbitration

Where as here, all of a plaintiff's claims are arbitrable, the legal action should be dismissed in its entirety.  *Gedid v. Huntington Nat'l Bank*, No. 11-1000, 2012 WL 691637, at *7 (W.D. Pa. Feb. 10, 2012) (citing *Blair*, 283 F.3d at 600) (if all of the claims are arbitrable, a court may dismiss the entire action); *Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 108 F. App'x 35, 38 (3d Cir. 2004) (same).

## V.   CONCLUSION

Ms. Evans agreed to arbitrate the present dispute.  This Court must dismiss the lawsuit without prejudice to her right initiate arbitration.

Respectfully submitted,

/s/ *Matthew J. Hank*

Matthew J. Hank, (PA #86086)
Hannah M. Lindgren, (PA #326049)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102.1321
267.402.3000
267.402.3131 (fax)

Attorneys for Defendant,
Date: April 25, 2022                Guitar Center Stores, Inc.